1  John B. Sganga, Jr. (SBN 116,211)
   jsganga@kmob.com
2  David G. Jankowski (SBN 205,634)
   djankowski@kmob.com
3  Christopher L. Ross (SBN 228,376)
   cross@kmob.com
4  KNOBBE, MARTENS, OLSON & BEAR, LLP
   2040 Main Street
5  Fourteenth Floor
   Irvine, CA 92614
6  Phone: (949) 760-0404
   Facsimile: (949) 760-9502
7
   Attorneys for Defendant/Counterclaimant,
8  MAGNETAR TECHNOLOGIES CORPORATION

9

10

11            IN THE UNITED STATES DISTRICT COURT

12          FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                      WESTERN DIVISION

14

| | |
|---|---|
| 15  INTAMIN, LTD., a Maryland corporation, | ) Civil Action No. ) SACV04-511 GAF (JWJx) |
| 16 | ) |
| 17  Plaintiff, | ) **DEFENDANT MAGNETAR** ) **TECHNOLOGIES CORP.'S** ) **SUPPLEMENTAL** |
| 18  v. | ) **MEMORANDUM** ) **REGARDING FEES AND** |
| 19  MAGNETAR TECHNOLOGIES CORP., a Nevada corporation, and DOES 1 through 10, inclusive, | ) **COSTS** ) |
| 20 | ) Hearing re Fees & Costs: |
| 21  Defendant. | ) Date:   TBD ) Time:   TBD ) Ctrm:  10D |
| 22 | ) |
| 23 | ) Honorable Gary A. Feess ) |
| 24 | ) Disc. Cutoff: June 7, 2005 |
| 25  AND RELATED COUNTERCLAIMS | ) Final Pretrial Conference: ) July 8, 2005, 1:30 p.m. |
| 26 | ) Trial: August 2005 |

27

28

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ................................................................................ 1

II.   MAGNETAR'S LITIGATION EXPENSES ............................................. 2

    A.    Magnetar's Legal Fees ............................................................... 2

    B.    Magnetar's Legal Costs ............................................................. 5

III.  THE COURT SHOULD AWARD MAGNETAR ITS FULL
      LITIGATION EXPENSES ................................................................. 6

    A.    Basis For Attorney Fees ............................................................ 6

    B.    Magnetar's Attorney Fees Incurred Are Reasonable, And
          They Should Be Awarded In Their Entirety .................................. 7

         1.    Knobbe Martens' Billing Rates Are Reasonable ................. 7

                 a.    Knobbe Martens' Prominence ............................. 8

                 b.    Comparing Knobbe Martens Billing Rates
                       To Other Top Intellectual Property Firms ............ 9

                 c.    Comparing Knobbe Martens Billing Rates
                       To Comparably-Sized Los Angeles Firms ........... 10

                 d.    Knobbe Marten's Rates Have Remained
                       Reasonable ....................................................... 11

                 e.    Other Courts' Approval of Knobbe Martens'
                       Rates ................................................................ 11

         2.    Knobbe Martens Spent A Reasonable Number Of
             Hours In Defense of Magnetar ............................................ 12

    C.    Magnetar's Costs Are Reasonable, And They Should Be
          Awarded In Their Entirety ......................................................... 16

IV.   THE COURT SHOULD AWARD MAGNETAR INTEREST
      ON ITS LITIGATION EXPENSES .................................................... 16

V.    CONCLUSION ............................................................................... 20

# TABLE OF AUTHORITIES

**Page No.**

*Albermarle Paper Co. v. Moody,*
422 U.S. 405, 95 S. Ct. 2362 (1975) ...................................... 17

*Brooktree Corp. v. Advanced Micro Devices, Inc.,*
757 F. Supp. 1101 (S.D. Cal. 1990) .................................... 18

*Chromalloy Am. Corp. v. Alloy Surfaces Co.,*
353 F. Supp. 429 (D. Del. 1973) ...................................... 7, 12

*Comark Communications Inc. v. Harris Corp.,*
47 U.S.P.Q.2d 1469 (E.D. Pa. 1998) ................................... 13

*Gates v. Rowland,*
39 F.3d 1439 (9th Cir. 1994) ..................................... 7, 12, 16

*Hanko-Med USA, Inc. v. Axiom Worldwide, Inc.,*
2009 WL 3064800 (*12-*13 M.D. Fla. 2009) ....................... 17, 19

*Jepson Inc. v. Makita USA Inc.,*
32 U.S.P.Q.2d 1107 (C.D. Cal. 1994) ................................. 12

*Johnson & Johnston Assocs., Inc. v. R.E. Service Co., Inc.,*
No. C 97-04382 CRB, 1998 WL 908925
(N.D. Cal. Dec. 23, 1998) ............................................ 14

*Joyal Products, Inc. v. Johnson Electric,*
No. America, Inc., 2009 WL 512156 (*10 D.N.J. 2009) ............ 18

*Jurgens v. CBK, Ltd.,*
80 F.3d 1566 (Fed. Cir. 1996) ......................................... 6

*Laitram Corp. v. NEC Corp.,*
115 F.3d 947 (Fed. Cir. 1997) ........................................ 18

*Lam, Inc. v. Johns-Manville Corp.,*
718 F.2d 1056 (Fed. Cir. 1983) ................................... 17, 19

*Mathis v. Hydro Air Indus. Inc.,*
1 U.S.P.Q.2d 1513 (C.D. Cal. 1986) ............................. passim

*Mathis v. Spears,*
857 F.2d 749 (Fed. Cir. 1988) .................................... passim

*Mee Indust. v. Dow Chem. Co.,*
2008 WL 2561896 (M.D.Fla 2008) .................................. 17

*Missouri v. Jenkins,*
491 U.S. 274, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989) ......... 10

*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.,*
781 F.2d 198 (Fed. Cir. 1986) ......................................... 6

## TABLE OF AUTHORITIES
### *(cont'd)*

Page No.

*Sheets v. Salt Lake County,*
45 F.3d 1383 (10th Cir. 1995)..........................................................7, 12, 16

*Special Devices, Inc. v. OEA, Inc.,*
269 F.3d 1340 (Fed. Cir. 2001) ....................................................................6

*Stilwell Dev. Inc. v. Chen,*
11 U.S.P.Q.2d 1328 (C.D. Cal. 1989) ........................................................12

*Ultra Coachbuilders, Inc. v. Gen. Sec. Ins. Co.,*
229 F. Supp. 2d 284 (S.D.N.Y. 2002)..................................................11, 17

*Water Technologies Corp. v. Calco Ltd.,*
714 F. Supp. 899 (N.D. Ill. 1989)...............................................................17

*Yamanouchi Pharm. Co. v. Danbury Pharm., Inc.,*
51 F. Supp. 2d 302 (S.D.N.Y. 1999)............................................................8

*Yurman Designs, Inc. v. PAJ, Inc.,*
125 F. Supp. 2d 54 (S.D.N.Y. 2000).............................................................8

## OTHER AUTHORITIES

28 U.S.C. § 1961 ........................................................................................18

35 U.S.C. § 285............................................................................................1, 6

Local Rule 7.................................................................................................14

Local Rule 54-3 .............................................................................................5

Local Rule 54-4 .............................................................................................5

*Moore's Federal Practice* §54.155[2] (3d ed. 2003) ................................7, 12, 16

1    Defendant/Counterclaimant Magnetar Technologies Corp. ("Magnetar")

2  hereby submits this Supplemental Memorandum of Points and Authorities in

3  Support of its Motion for Attorney Fees. This motion is filed pursuant to the

4  Court's August 26, 2009 Civil Minute Order (Docket No. 167) and the Court's

5  October 8, 2009 Order re: Motion for Attorneys' Fees (Docket No. 177). The

6  Court has already granted Magnetar's motion seeking a finding that this is an

7  exceptional case under 35 U.S.C. § 285 and that an award of attorney fees is

8  appropriate (Docket No. 177). This memorandum and the evidence submitted

9  herewith set forth and support the quantum of reasonable fees and costs that

10  Magnetar is seeking as an award.

## I. **INTRODUCTION**

12    This Court has already found that Intamin Ltd. ("Intamin") committed

13  misconduct related to the litigation of its patent infringement claim against

14  Magnetar by forging the chain of title to the asserted patent and failing to

15  disclose the fraudulent assignments during discovery. (*See* Docket No. 160 at

16  32.) This Court has further found that Intamin did not dispute Magnetar's

17  evidence regarding the forgeries (*id.* at 24) and that because of Intamin's failure

18  to produce the forgeries or disclose their existence in discovery, Magnetar was

19  unable to depose the inventors to determine the validity of the assignments. (*Id.*

20  at 31.) This Court has further found that Intamin also made materially false

21  statements regarding its ownership rights in the asserted patent, both before and

22  during the litigation. (*Id.* at 32.)

23    Under such circumstances, with a plaintiff engaged in manifest willful

24  misconduct both prior to and throughout the extent of a five-years-long

25  litigation, it is appropriate and proper to award Magnetar the entirety of its

26  reasonable expenses incurred in defending itself in the lawsuit. Such an award

27  is all the more appropriate when, as here, the defendant is small and the

28  litigation has devastated its business.

As discussed below, Magnetar's expenses incurred in defending itself have been reasonable by any measure. To defend itself in a patent infringement suit brought by a large multinational plaintiff, Magnetar made a reasonable choice in retaining Knobbe Martens Olson and Bear LLP ("Knobbe Martens"), an intellectual property specialty firm with a strong national and international reputation. Indeed, Intamin's lawsuit threatened, and ultimately crippled, Magnetar's one and only product. Knobbe Martens' billing rates are at or below those of attorneys at other top IP firms and at comparably-sized firms in Southern California. The total expenses incurred by Magnetar, about $820,000, are well below the median amount for comparably-sized patent infringement cases. This case has involved significant effort, including litigation through the end of discovery, including depositions of the parties and the prosecuting attorneys for the asserted patent, a first dispositive motion for summary judgment, a motion for sanctions under Rule 11, a Federal Circuit appeal, a second dispositive motion for summary judgment (including analyses on non-infringement, invalidity, and unclean hands), and a motion for exceptional case and attorney fees.

Magnetar's litigation expenses have been reasonable, and they should be included in f ull in Magnetar's award. Given the extended duration of the lawsuit, which is now five and a half years old, Magnetar's award should also include interest.

## II. MAGNETAR'S LITIGATION EXPENSES

### A.    Magnetar's Legal Fees

All of the expenses for which Magnetar seeks reimbursement are listed on Knobbe Martens' invoices attached as Exhibits C and D to the Confidential

/ / /

/ / /

/ / /

1  Declaration of Christopher L. Ross.  (Ross Decl. ¶ 5; Exs. C & D.)[1]  For the

2  convenience of the Court, Magnetar's expenses are presented in several tables

3  that categorize and summarize its expenses.  One table summarizes all of

4  Magnetar's litigation expenses.  (*See* Ross Decl., Ex. A.)  Four tables from

5  Exhibit A, reproduced in part below, provide a breakdown of the attorney fees

6  incurred for the four principal attorneys that have represented Magnetar in this

7  lawsuit. (*Id.*, Ex. A.)

| Attorney A | | |
|---|---|---|
| Year | Hours | Amt Billed |
| 2004 | 121.79 | $62,117.00 |
| 2005 | 114.8 | $61,418.80 |
| 2006 | 55.6 | $31,414.00 |
| 2007 | 14 | $8,260.00 |
| 2008 | 10 | $6,250.00 |
| 2009 | 50.2 | $33,132.00 |
| Total | 366.39 | $202,591.80 |

| Attorney B | | |
|---|---|---|
| Year | Hours | Amt Billed |
| 2004 | 131.65 | $39,495.00 |
| 2005 | 154 | $50,820.00 |
| 2006 | 0.25 | $90.00 |
| 2007 | | $0.00 |
| 2008 | 21 | $8,820.00 |
| 2009 | 130 | $58,500.00 |
| Total | 436.9 | $157,725.00 |

| Attorney C | | |
|---|---|---|
| Year | Hours | Amt Billed |
| 2004 | 378 | $73,710.00 |
| 2005 | 335.75 | $77,222.46 |
| 2006 | 204.4 | $52,207.50 |
| 2007 | 13.2 | $3,960.00 |
| 2008 | 8.8 | $3,080.00 |
| 2009 | 114.6 | $44,694.00 |
| Total | 1054.75 | $254,873.96 |

| Attorney D | | |
|---|---|---|
| Year | Hours | Amt Billed |
| 2004 | | $0.00 |
| 2005 | 21.7 | $8,246.00 |
| 2006 | 117.15 | $49,203.00 |
| 2007 | | $0.00 |
| 2008 | | $0.00 |
| 2009 | | $0.00 |
| Total | 138.85 | $57,449.00 |

20  Other tables, reproduced in part below, provide a breakdown of the fees

21  incurred for Knobbe Martens personnel who billed smaller amounts to

22  Magnetar. (*Id.*, Ex. A.)

23  / / /

24  / / /

25  / / /

---

27  [1]    The Confidential Declaration of Christopher L. Ross is filed concurrently herewith.  The Ross Decl. includes as attachments confidential Exhibits A through D.

-3-

| Other Partners | | |
|---|---|---|
| Year | Hours | Amt Billed |
| 2004 | 13.38 | $6,121.75 |
| 2005 | 2.2 | $899.00 |
| | | |
| **Total** | **15.58** | **$7,020.75** |

| Other Associates | | |
|---|---|---|
| Year | Hours | Amt Billed |
| 2004 | 69.99 | $15,397.75 |
| 2005 | 4.3 | $1,204.00 |
| 2009 | 103.3 | $27,911.00 |
| **Total** | **177.59** | **$44,512.75** |

| Paralegals/Staff | | |
|---|---|---|
| Year | Hours | Amt Billed |
| 2004 | 249.87 | $26,026.25 |
| 2005 | 220.77 | $26,579.02 |
| 2006 | 64.2 | $10,432.00 |
| 2007 | 3.25 | $596.75 |
| 2008 | 3.5 | $682.50 |
| 2009 | 109.8 | $16,196.50 |
| **Total** | **651.39** | **$80,513.02** |

Total legal fees incurred by Magnetar through September 2009 from services provided by Knobbe Martens attorneys and litigation support personnel are $804,686.

For the Court's convenience, Magnetar has also generated a table, reproduced in part below, that breaks down the legal fees incurred by Magnetar based on the tasks associated with Magnetar's defense. (*Id.* ¶ 4, Ex. B.)

| | Task Category | Total |
|---|---|---|
| 1 | Pre-Answer Investigation of Prior Art Defenses / Initial Pleadings | $20,123.00 |
| 2 | Analyzing Prosecution/Searching Analysis of Prior Art Post Answer Filing | $20,828.25 |
| 3 | Written Discovery / Prepare for & Attend 26(f) Conference / Status Conference / Extensions | $35,114.00 |
| 4 | Discovery Disputes | $52,001.70 |
| 5 | Expert Witness Interviews | $6,882.50 |
| 6 | Depositions / Subpoenas | $43,992.20 |
| 7 | Motion for Summary Judgment of Non-Infringement & Rule 11 Sanctions | $169,248.09 |
| 8 | Motion to Dismiss / Motion for Costs | $12,305.75 |
| 9 | Appeal to Federal Circuit / Mediation | $173,606.50 |
| 10 | Post Appeal Litigation - Motion for Summary Judgment of Invalidity, Non-Infringement, & Unclean Hands | $154,470.25 |
| 11 | Motion for Attorney Fees | $36,643.00 |
| 12 | Reporting to Client | $36,583.50 |
| 13 | Organizing Documents / Calendaring Dates | $17,301.88 |
| 14 | Time Written Off | $25,585.66 |
| | **Total:** | **$804,686.28** |

/ / /

/ / /

Magnetar compiled these numbers by reviewing the individual time entries listed on Knobbe Martens' invoices (Ross Decl., Exs. C & D) and allocating the fees according to the work performed. (*Id.* ¶ 4.) If an entry in an invoice included time for multiple tasks, Magnetar allocated the time according to a *pro rata* splitting of the fees for that time entry. (*Id.*) The final category in Exhibit B sets forth litigation fees *for which Magnetar is not requesting inclusion in its award*. Some of this work was spent on a motion and counterclaim that Magnetar elected not to file with the Court. Magnetar has also excluded fees related to tangential matters, such as coordination with Magnetar's antitrust co-counsel. As shown in the table, the total amount of legal fees written off is $25,585.66. (*Id.*, Ex. B.)

## B.    Magnetar's Legal Costs

Magnetar's legal costs incurred in defending the lawsuit are also set forth in Exhibit A. Below is a table that provides Magnetar's non-fees expenses divided into categories pursuant to Local Rule 54-4, together with a subtotal for each category:

| Non-Fee Expenses | |
|---|---|
| **Category of Expense** | **Amount** |
| Service - Summons, Subpoena | $1,596.28 |
| Depositions | $6,117.60 |
| Exhibit Copies | $423.40 |
| Necessary to defense | $2,848.32 |
| Translations | $783.60 |
| **Total** | **$11,769.20** |

(*Id.*, Ex. A.)

A proposed Bill of Costs pursuant to Local Rule 54-3 is attached to the Jankowski Declaration[2] as Exhibit E. In support of its proposed Bill of Costs, Magnetar is submitting in Exhibit F five tables that identify the specific costs

---

[2]    The Declaration of David G. Jankowski is filed concurrently herewith. The Jankowski Decl. includes as attachments Exhibits E through Z.

-5-

1  incurred in the five cost categories, together with supporting documentation.

2  (*See* Jankowski Decl. ¶ 4; Ex. F.)

3      In addition to the costs identified in its proposed Bill of Costs, Magnetar

4  has also incurred $28,776 in additional costs for legal research, additional

5  photocopying charges, mailing costs, fax charges, courier charges, etc.  (*See*

6  Ross Decl., Exs. A, C & D.)

7      The total of Magnetar's litigation expenses incurred defending this

8  lawsuit through September 2009, including both fees and costs, and excluding

9  time written off, is $819,646.  (*Id.*, Ex. A.)

10  ### III.  THE COURT SHOULD AWARD MAGNETAR ITS FULL

11  ### LITIGATION EXPENSES

12  **A.    Basis For Attorney Fees**

13      The Court has granted Magnetar's Motion for Attorney's Fees based on

14  35 U.S.C. § 285.  (Order (Docket No. 177) at 3.)  The purposes of Section 285

15  are 1) to fairly allocate the burdens of litigation between the winner and loser;

16  and 2) to punish the losing party's misconduct.  *S.C. Johnson & Son, Inc. v.*

17  *Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986); *Jurgens v. CBK, Ltd.*,

18  80 F.3d 1566, 1571 n.3 (Fed. Cir. 1996).

19      An award commensurate with Magnetar's actual litigation expenses is

20  critical in this case to make Magnetar whole.  Magnetar is a small, family

21  owned company that has one product line - magnetic brake systems.  Intamin is

22  the U.S. sales arm of a large international consortium of companies.  Intamin

23  has engaged in a pattern of misconduct, prior to and throughout this lawsuit, that

24  has been successful in creating a financial strain on Magnetar.  Magnetar should

25  never have been subjected to the burden of this lawsuit, and it should be

26  compensated to the extent possible to make it whole.

27      For an award of attorney fees under Section 285, "the amount of the

28  attorney fees depends on the extent to which the case is exceptional.  In other

words, the exceptionality determination highly influences the award setting." *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340 (Fed. Cir. 2001). In this case, the Court has already found that Intamin had engaged in serious fraud and other misconduct. (*See, e.g.*, Order (Docket No. 160) at 32.) The highly exceptional nature of this case supports an award of Magnetar's full reasonable litigation expenses.

**B.    Magnetar's Attorney Fees Incurred Are Reasonable, And They Should Be Awarded In Their Entirety**

The law presumes that the billing rates and hours actually charged to and paid by the client are reasonable. *See Mathis v. Hydro Air Indus. Inc.*, 1 U.S.P.Q.2d 1513, 1531 (C.D. Cal. 1986) ("*Mathis I*"); *see also Chromalloy Am. Corp. v. Alloy Surfaces Co.*, 353 F. Supp. 429, 431 (D. Del. 1973) (stating that a court will deviate from the actual rate paid by the client "[o]nly if the evidence reveals that the rate actually charged is abnormally high or abnormally low"); *Mathis v. Spears*, 857 F.2d 749, 756 (Fed. Cir. 1988) ("*Mathis II*") (quoting *Chromalloy*). Accordingly, once the movant presents the Court with detailed, contemporaneous billing records, the burden shifts to the non-movant to show that specific time expenditures were unreasonable, or that specific rates were unreasonably high.[3] *See Gates v. Rowland*, 39 F.3d 1439, 1449-51 (9th Cir. 1994); *see also Sheets v. Salt Lake County*, 45 F.3d 1383, 1391 (10th Cir. 1995); 10 James Wm. Moore et al., *Moore's Federal Practice* §54.155[2] (3d ed. 2003).

**1.    Knobbe Martens' Billing Rates Are Reasonable**

---

[3]    The invoices filed with the Court and served on Intamin include some partially redacted entries. Entries were redacted for one of two reasons: (1) they relate to attorney fees Magnetar is not seeking reimbursement for; or (2) they mention the names of potential witnesses or consultants which is privileged work-product information. Because Magnetar is not seeking reimbursement for the certain redacted entries, the description of those claims should have no bearing on this Court's calculus. However, Magnetar will provide unredacted copies of these invoices for in camera review should the Court request them.

1    The billing rates of Knobbe Martens' attorneys and paralegals are not
2  abnormally high, but rather are in line with (1) the rates charged by the nation's
3  leading patent litigation firms; (2) the rates charged by comparably-sized firms
4  in the Los Angeles metropolitan area; and (3) the rates charged by other
5  California intellectual property lawyers. This is evident from several surveys of
6  attorney and paralegal billing rates, as well as surveys indicating that Knobbe
7  Martens is one of the leading IP litigation firms in the United States. Many
8  courts have relied on such surveys in analyzing the reasonableness of attorney
9  fees. *See, e.g., Mathis II*, 857 F.2d at 756 (AIPLA survey); *Yamanouchi Pharm.*
10  *Co. v. Danbury Pharm., Inc.*, 51 F. Supp. 2d 302, 304-05 (S.D.N.Y. 1999)
11  (AIPLA and *National Law Journal* surveys); *Yurman Designs, Inc. v. PAJ, Inc.*,
12  125 F. Supp. 2d 54, 56 (S.D.N.Y. 2000) (AIPLA and National Federation of
13  Paralegal Associations surveys).

14              **a.      Knobbe Martens' Prominence**

15    A number of surveys have recognized Knobbe Martens as one of the
16  leading intellectual property ("IP") law firms in the nation. Knobbe Martens has
17  repeatedly been voted the top IP firm in the western United States in an
18  international survey of thousands of IP practitioners conducted by *Managing*
19  *Intellectual Property* magazine. (Jankowski Decl., Exs. G & H (Excerpts from
20  surveys from 1999 and 2001.)  In 2003, the *Managing Intellectual Property*
21  survey ranked Knobbe Martens third nationally. (*Id.*, Ex. I.)

22    Similarly, an *American Lawyer* survey of patent lawsuits filed in 2002
23  ranked Knobbe Martens eleventh in the nation regarding the number of patent
24  suits handled. (*Id.*, Ex. J at 44.)  Similarly, an *American Lawyer* survey of
25  patent lawsuits filed in 2006 ranked Knobbe Martens in the top ten nationally
26  and number one on the west coast. (*Id.*, Ex. K.)

27  / / /

28  / / /

### b.    Comparing Knobbe Martens Billing Rates To Other Top Intellectual Property Firms

Knobbe Martens' partner billing rates fall within or below the range of partner billing rates at other top intellectual property litigation firms. (Ross Decl. ¶ 8.) By way of example, the 2004 billing rates of Knobbe Martens' partners early in this lawsuit ($380 to $510) were comparable to or lower than the rates of partners at IP firm Fish & Richardson (ranked second in the 2002 *American Lawyer* survey),[4] who charged rates of $340-$575 in the 2002-2003 timeframe;[5] comparable to or lower than partners at Sidley Austin Brown & Wood (ranked fourth in the 2002 survey), who charged rates of $395-$600; and comparable to partners at Townsend & Townsend (ranked nineteenth in the 2002 survey), who charged rates of $360-$525. (Compare Ross Decl., Ex. A to Jankowski Decl., Ex. J & Ex. L at 18-20.) Indeed, because attorney billing rates appreciated annually from 2002 to 2004, the billing rates at Fish & Richardson and the other firms were certainly higher in 2004 than they were when the survey was published in 2003, further revealing the reasonableness of Knobbe Martens' 2004 partner rates compared to those firms.

Likewise, Knobbe Martens' associate billing rates fall within or below the range of associate billing rates at other top intellectual property litigation firms. (Ross Decl. ¶ 9.) By way of example, the 2004 billing rates of Knobbe Martens' associates early in this lawsuit ($195 to $300) were comparable to or lower than the 2002-2003 rates of associates at Fish & Richardson ($195-$355), Sidley Austin Brown & Wood ($205-$395), and Townsend & Townsend ($150-

---

[4]    The 2002 *American Lawyer* survey ranking IP litigation law firms was published in the May 2003 issue of *IP Law & Business*. (*See* Jankowski Decl., Ex. J.)

[5]    The 2002-2003 billing rates for Fish & Richardson and the other law firms are from a survey published in the December 2003 issue of *The National Law Journal*. (*See* Jankowski Decl., Ex. L at 18-20.)

$360). (*See* Jankowski Decl., Ex. L at 18-20.)  Thus, Knobbe Martens' billing rates are reasonable when compared to those of other top patent litigation firms. Approximately 10% of Magnetar's legal fees are attributable to work performed by Knobbe Martens' paralegals and litigation clerks.  (*See* Ross Decl., Ex. A.) It is customary for law firms to bill for such time, and these fees should be included in an award of reasonable attorney fees.[6]  *See Missouri v. Jenkins*, 491 U.S. 274, 286, 109 S. Ct. 2463, 2471, 105 L. Ed. 2d 229 (1989).

As with its attorney billing rates, Knobbe Martens' non-attorney litigation support staff billing rates are commensurate with those of other firms.  (Ross Decl. ¶ 10.)  A 2008 survey by the National Association of Legal Assistants found that the average billing rate in 2008 for non-secretarial legal support staff in the Far West portion of the U.S. (which includes both Southern California and less expensive regions) was $125.  (Jankowski Decl., Ex. M at 4 (Table 3.4).)  By comparison, the average billing rate for Knobbe Martens' litigation support staff over the course of the Magnetar litigation has been $124.  (*See* Ross Decl., Ex. A.)

> ### c.    Comparing Knobbe Martens Billing Rates To Comparably-Sized Los Angeles Firms

Knobbe Martens' billing rates are also reasonable when compared to other comparably-sized law firms in the Los Angeles metropolitan area. Knobbe Martens currently has more than 250 attorneys firm-wide, including more than 180 attorneys in its three offices in the Los Angeles area.  (Jankowski Decl. ¶ 5.)

A 2003 survey conducted by Helder Associates contains information on partner and associate billing rates for firms of 100 or more attorneys in the Los Angeles metropolitan area.  (*See id.*, Ex. N.)  The survey, which divides partner

---

[6]    Knobbe Martens did not bill Magnetar for work performed by secretarial staff members.  (Jankowski Decl. ¶ 6.)

-10-

1    billing rates into ten tiers, reveals that 57% of partners in Los Angeles firms of

2    100 or more attorneys in 2003 were at or above the 2004 tier of Knobbe

3    Martens' senior partner, and 89% of partners in such firms were at or above the

4    tier of Knobbe Martens' junior partner.  (*See id.* ¶ 11.)  Likewise, the 2004

5    billing rates of Knobbe Martens' associates (law school graduates in 1999 and

6    2003, respectively) were below the average billing rates for their classes in firms

7    of 100 or more attorneys.  (*See id.*, Ex. N at 157.)

### d.    Knobbe Marten's Rates Have Remained Reasonable

9        Knobbe Martens' attorney billing rates have remained reasonable

10    throughout the litigation.  A 2009 AIPLA survey provides 2008 billing rates for

11    IP partners and associates in various sized firms.  (*See* Jankowski Decl., Ex. O.)

12    According to the AIPLA report, the 2008 billing rate of Knobbe Martens' senior

13    partner was comparable to the average billing rate for IP partners in firms of 150

14    or more attorneys and well under the 75th percentile.[7]  (*See id.*, Ex. O at I-34.)

15    Based on the same survey, the 2008 billing rates of Knobbe Martens' other

16    attorneys were below the 25th percentile of the corresponding attorneys in firms

17    of 150 or more attorneys.  (*See id.*)

### e.    Other Courts' Approval of Knobbe Martens' Rates

19        Finally, a number of courts have already found Knobbe Martens' billing

20    rates to be reasonable.  *See, e.g., Mathis I,* 1 U.S.P.Q.2d at 1530-31, *aff'd*

21    *Mathis II,* 857 F.2d at 756; *Ultra Coachbuilders, Inc. v. Gen. Sec. Ins. Co.,* 229

22    F. Supp. 2d 284, 288 (S.D.N.Y. 2002) ("Thus, Knobbe's rates were not

_____

[7]    Knobbe Martens' lead counsel, John Sganga, has twenty-two years of experience as a litigation partner at Knobbe Martens.  (*See* Jankowski Decl., Ex. P.)  Mr. Sganga is very highly regarded by his peers in the intellectual property community.  *Law & Politics* named Mr. Sganga one of Southern California's "Intellectual Property Litigation Super Lawyers" for 2004, 2005, 2006, and 2007.  (*Id.*)  An excerpt from a representative issue of *Law & Politics,* published in February 2004 is attached as Exhibit Q to the Jankowski Decl.  Mr. Sganga has also been recognized by his peers as a "Best Lawyer" in the specialty of Intellectual Property Law in the 2007 and 2008 editions of *The Best Lawyers in America.*  (*See id.*, Ex. P.)

1   excessive compared to other California intellectual property lawyers."); *Jepson*

2   *Inc. v. Makita USA Inc.,* 32 U.S.P.Q.2d 1107, 1114 (C.D. Cal. 1994); *Stilwell*

3   *Dev. Inc. v. Chen,* 11 U.S.P.Q.2d 1328, 1333 (C.D. Cal. 1989) (approving

4   billing rates of Knobbe Martens partners Don Martens and John Sganga).   In

5   fact, the Central District of California has held that a senior partner at Knobbe

6   Martens could reasonably charge a billing rate higher than the 75th percentile

7   rate in the AIPLA survey. *See Stilwell,* 11 U.S.P.Q.2d at 1333.   In this case, as

8   in the earlier Knobbe Martens cases, there is no reason for the Court to deviate

9   from the very sensible presumption that rates that were actually billed to and

10   paid by the client are reasonable.   *See Mathis I,* 1 U.S.P.Q.2d at 1530-31;

11   *Chromalloy*, 353 F. Supp. at 431; *Mathis II,* 857 F.2d at 756.

12       **2.    Knobbe Martens Spent A Reasonable Number Of Hours In**

13            **Defense of Magnetar**

14       Knobbe Martens exercises sound billing judgment in determining what is

15   billed to its clients. (Jankowski Decl. ¶ 5.) It is the firm's policy not to bill time

16   or costs to a client unless the amount and nature of the charge are consistent

17   with customary business practices in the legal marketplace. (*Id.*) In accordance

18   with this policy, sound billing judgment was exercised with respect to all of

19   Knobbe Martens' invoices to Magnetar. (*Id.*) To the extent Intamin believes

20   Knobbe Martens spent excessive time defending Magnetar, Intamin has the

21   burden of identifying specific time entries that represent unreasonable

22   expenditures of attorney time. *See Gates*, 39 F.3d at 1449-51; *see also Sheets*,

23   45 F.3d at 1391; 10 James Wm. Moore et al., *Moore's Federal Practice* §

24   54.155[2] (3d ed. 2003).

25       The time Knobbe Martens has spent defending Magnetar is reasonable in

26   view of the high stakes for Magnetar, Intamin's litigation tactics, and the

27   complex nature of the case.   First, what was at stake for Magnetar more than

28   justified the vigor of Magnetar's defense.   Magnetar is a small supplier of

1   magnetic braking systems for new installations and retrofitted older installations
2   for amusement park rides.  Intamin's lawsuit threatened Magnetar's ability to
3   sell its one and only product.  Indeed, the mere existence of this lawsuit has
4   already devastated Magnetar's business.  The risk of an injunction for the next
5   twelve years[8] and the chilling effect from the pendency of the litigation has
6   made it more than reasonable for Magnetar to mount a vigorous defense.

7          Based on the annual revenue stream and profits earned by Magnetar prior
8   to the filing of this lawsuit, Intamin's filing of the Complaint threatened existing
9   and future business of Magnetar worth several million dollars. (Pribonic Decl.
10  ¶¶ 1-5; Ex. AA.)[9]

11         The 2009 AIPLA survey reports that, for patent infringement suits with
12  between $1 and $25 million at stake handled by law firms with 76 or more
13  attorneys, it costs a party an average of $2.287 million to litigate the case
14  through discovery.  (See Jankowski Decl., Ex. O at I-130.)  This is far greater
15  than the $0.82 million incurred by Magnetar.  Indeed, in this case Magnetar has
16  not only litigated the district court case through the end of discovery, including
17  depositions of the parties and the prosecuting attorneys for the asserted patent,
18  two complex motions for summary judgment, and motions for sanctions under
19  Rule 11 and exceptional case under Section 285, but also a full appeal through
20  the Federal Circuit.

21         Magnetar's expenses even fall well below the 25% percentile ($1.375
22  million), providing compelling evidence that Knobbe Martens spent a
23  reasonable amount of time on the litigation.  *See Comark Communications Inc.*
24  *v. Harris Corp.,* 47 U.S.P.Q.2d 1469, 1473-74 (E.D. Pa. 1998) (relying on costs

25  _____
26  [8]      Absent a showing of unenforceability or invalidity, Intamin's
    patent will expire in 2017.

27  [9]      The Confidential Declaration of Edward M. Pribonic ("Pribonic
    Decl.") is filed concurrently herewith, together with confidential Exhibits AA
28  and BB.

-13-

1    data in AIPLA survey); *Johnson & Johnston Assocs., Inc. v. R.E. Service Co.,*

2    *Inc.*, No. C 97-04382 CRB, 1998 WL 908925, at *11 (N.D. Cal. Dec. 23, 1998)

3    (same).

4         The reasonableness of Knobbe Martens' fees is further demonstrated by

5    the average attorney hourly rate for the entire litigation (calculated by total

6    attorney fees divided by total attorney hours), a rate of about $330. (*See* Ross

7    Decl., Ex. A.) This low average rate demonstrates that Knobbe Martens lower

8    billing attorneys (e.g. associates supervised by junior partners) did the lion's

9    share of the work.

10         Furthermore, Intamin's own conduct needlessly increased Magnetar's

11    costs in this litigation and fueled Magnetar's need to present a thorough defense.

12    Magnetar notified Intamin as early as September 2004 that it intended to file

13    substantive motions as it became apparent that Intamin had no reasonable basis

14    for asserting infringement, and that it had failed to perform a proper prefiling

15    investigation prior to bringing the lawsuit. (Jankowski Decl., Exs. R & U.)

16    Despite ample opportunity, Intamin made no effort to explain its position or to

17    mitigate Magnetar's litigation expenses.

18         Repeatedly during the litigation, Intamin stonewalled Magnetar on basic

19    discovery requests. (*Id.* ¶ 19.) Magnetar originally noticed the deposition of

20    Intamin's 30(b)(6) for September 30, 2004. Intamin failed to respond to that

21    original notice. Subsequently, Magnetar followed up on October 7, 2004, and

22    October 15, 2004, eventually stymied to the point of having to ask if it would be

23    necessary to file a motion to compel the deposition testimony. (*Id.,* Ex. S.)

24    After buying time by promising to comply with Magnetar's request, Intamin

25    failed to provide its witness in mid November. (*Id.,* Ex. V.) The dilatory tactics

26    continued when Intamin waited to provide its 30(b)(6) witness until January 12,

27    2005, over four months after the originally noticed deposition date and only

28    after repeated attempts by Magnetar to secure that deposition.

Intamin also unnecessarily increased Magnetar's costs by failing to satisfy its written discovery obligations, including failing to respond to repeated requests for meet-and-confers under Local Rule 7. (*Id.*, Exs. T & V.) Magnetar was forced to file a unilateral motion to compel that Intamin failed to oppose and that ultimately resulted in an award of sanctions against Intamin. (Docket No. 66.) It is reasonable for a defendant to spend time addressing the plaintiff's failure to comply with discovery requests. *See Mathis I*, 1 U.S.P.Q.2d at 1531. This case is rife with examples of Intamin needlessly increasing costs by failing to cooperate. (*See, e.g.*, Jankowski Decl., Ex. W.)

Intamin further increased the costs of this litigation by failing to produce the forged assignment documents in discovery, thereby forcing Magnetar to independently locate the documents. (*See* Memorandum and Order (Docket No. 160) at 32.) Indeed, the Court observed as much in its October 8, 2009 Order (Docket No. 177 at 3 ("Intamin's discovery misconduct has only added to Magnetar's burdens in this case.").)

The time spent by Magnetar's attorneys is also reasonable in view of the complex nature of the case. Patent cases always contain a large number of complex legal issues, and they frequently involve difficult technical issues or convoluted patent histories. This case was no exception. Intamin's failure to provide a meaningful claim analysis or infringement analysis required Magnetar to guess at how Intamin was interpreting the asserted patent. Out of necessity, Knobbe Martens' attorneys reviewed extensive oppositions in the European Patent Office relating to a counterpart to the asserted patent. In addition, much of the prior art to the patent and one of the oppositions were in foreign languages that required time and translation into English to understand.

Finally, Magnetar has not requested reimbursement for the certain time spent by counsel on tasks that did not ultimately result in a motion filed with the Court or a counter-claim brought against Intamin. In an abundance of caution,

1  Magnetar has omitted this time in order to ensure that its request for all its

2  expenses is thoroughly reasonable.

3  **C.    Magnetar's Costs Are Reasonable, And They Should Be Awarded In**

4  **Their Entirety**

5       Magnetar's award should include its non-fees expenses incurred in

6  defending the lawsuit. As discussed above, Magnetar has served Intamin with a

7  proposed Bill of Costs and documents in support thereof. (*See* Jankowski Decl.,

8  Exs. E & F.) In addition, Magnetar is also seeking an award that includes all

9  non-fee expenses of the sort that are customarily billed to a client. (Jankowski

10  Decl. ¶ 5; Ross Decl., Exs. A, C & D.) The total amount of Magnetar's non-

11  fees expenses, approximately $40,500, is reasonable given the length and size of

12  the case. The Central District of California, for example, has found non-fees

13  expenses to be reasonable where they constituted 20% of an accused infringer's

14  total expenses. *See Mathis I*, 1 U.S.P.Q.2d at 1531. Magnetar's non-fees

15  expenses of $40,500 is about 5% of Magnetar's total expenses, well below the

16  20% level in *Mathis I*. Magnetar's non-fees expenses are particularly low given

17  that they include costs associated with a Federal Circuit appeal.

18       Intamin bears the burden of showing that specific expenses are

19  unreasonable. *See Gates*, 39 F.3d at 1449-51; *see also Sheets*, 45 F.3d at 1391;

20  10 James Wm. Moore et al., *Moore's Federal Practice* § 54.155[2] (3d ed.

21  2003). Because Intamin cannot carry this burden, the Court should award

22  Magnetar all of its non-fees expenses.

23  **IV.  THE COURT SHOULD AWARD MAGNETAR INTEREST ON ITS**

24  **LITIGATION EXPENSES**

25       This Court has discretion to award prejudgment interest on Magnetar's

26  litigation expenses. *Spears*, 857 F.2d at 761 ("Thus we hold that a district court

27  does have authority, in cases of 'bad faith or other exceptional circumstances,'

28  to award prejudgment interest on the unliquidated sum of an award made under

Section 285."). The Federal Circuit noted that Section 285 follows "[t]he general rule [] that when a wrong has been done . . . [t]he injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (quoting *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 418-419, 95 S. Ct. 2362, 2372 (1975)). Thus, Courts have awarded prejudgment interest on attorney fees awarded under Section 285 in order to make the prevailing party whole. *See e.g., Water Technologies Corp. v. Calco Ltd.*, 714 F.Supp 899, 910 (N.D. Ill. 1989) ("[A]n award of prejudgment interest is proper to fully compensate the plaintiffs for the expenses they incurred during litigation."). Prejudgment interest may be calculated running from the date of the invoice memorializing the expense. *Ultra Coachbuilders*, 229 F. Supp. 2d at 288-89; *see also Mee Indust. v. Dow Chem. Co.*, 2008 WL 2561896 (M.D.Fla 2008).

In the present case, Magnetar has had to endure five and a half years of objectively meritless litigation, bad faith tactics, and fraud. To be made whole for this ordeal, Magnetar's award should include interest on its reasonable litigation expenses. Furthermore, Magnetar has had to borrow money to fund its defense of this lawsuit, with some loans carrying interest rates well in excess of 10%. (Pribonic Decl. ¶¶ 8-10; Ex. BB.) Thus, the passage of time has already burdened Magnetar with enormous borrowing costs. When a party is forced to borrow money at a rate at or above the prime rate, the Court may award prejudgment interest at a higher rate to account for the borrowing costs. *See Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1066 (Fed. Cir. 1983); *See also Hanko-Med USA, Inc. v. Axiom Worldwide, Inc.* 2009 WL 3064800, *12- *13 (M.D. Fla. 2009).

Furthermore, due to Magnetar's small size, Magnetar's financial hardship has extended to Mr. Pribonic personally. Magnetar's loss of business opportunities and its need to fund its defense of this lawsuit has resulted in Mr.

1    Pribonic losing personal assets of substantial value. (Pribonic Decl. ¶¶ 11-12.)

2    The Court has discretion to set the prejudgment interest rate to suit the

3    circumstances. *See Laitram Corp. v. NEC Corp.,* 115 F.3d 947, 955 (Fed. Cir.

4    1997). For the Court's convenience, Magnetar has calculated interest amounts

5    on its litigation expenses using four different approaches (*see* Jankowski Decl.

6    ¶ 28; Ex. Z):

7        (1)    Model 1 applies a fixed interest rate based on the weekly average

8                1-year constant maturity Treasury yield for the week of August 28,

9                2009 (0.45%), as published by the Board of Governors of the

10               Federal Reserve System, compounded annually. *See, e.g.,* 28

11               U.S.C. § 1961.

12       (2)    Model 2 applies the yearly-average U.S. Prime Rate, compounded

13               annually.[10] *See e.g., Joyal Products, Inc. v. Johnson Electric North*

14               *America, Inc.,* 2009 WL 512156, *10 (D.N.J. 2009) (applying

15               prime rate compounded annually). Under Model 2, the first year of

16               interest for a given expense is calculated on the one-year

17               anniversary date by applying the yearly-averaged Prime Rate for

18               the calendar year in which the expense was incurred.

19       (3)    Model 3 applies a fixed 7% rate, compounded annually. The 7%

20               rate is a California statutory rate used in California Superior Court

21               that has been followed by some U.S. district courts. (California

22               Constitution, Article 15.) *See e.g., Brooktree Corp. v. Advanced*

23               *Micro Devices, Inc.,* 757 F.Supp 1101, 1103 (S.D. Cal. 1990)

24               (applying California statutory rate).

25       (4)    Model 4 applies a fixed 10% rate, compounded annually. The 10%

26

27       [10]    A table providing historical U.S. Prime Rate values and a table
providing derived yearly-averaged Prime Rate values are provided in Exhibit Y

28   attached to the Jankowski Declaration.

defense of this litigation heavily through funds borrowed at interest rates well in excess of 10%. *See Lam*, 718 F.2d at 1066; *Hanko-Med USA*, 2009 WL 3064800.

Below is a table summarizing the total interest calculated under each of these four models, together with a corresponding calculation of a total award to Magnetar through September 2009.[11]

| Model | Litigation expenses | Interest | Total Award |
|-------|---------------------|----------|-------------|
| 1 | $819,646 | $12,493 | **$832,139** |
| 2 | $819,646 | $187,866 | **$1,007,512** |
| 3 | $819,646 | $216,280 | **$1,035,926** |
| 4 | $819,646 | $324,505 | **$1,144,151** |

Here, it is apparent that Model 1, which employs a fixed interest rate of 0.45%, does not adequately account for the Net Present Value of monies expended by Magnetar in the past. Indeed, because of the current financial crisis, U.S. Treasury yields are at historically low levels that do not accurately capture the time value of money between 2004 and 2009. (*See* Jankowski Decl., Ex. X (showing Treasury yields from 2004 to the present).)

In view of Intamin's egregious behavior and the wholly unwarranted harm imposed on Magnetar over five and a half years, Magnetar respectfully submits that Model 4, with a 10% interest rate, is the most appropriate approach for the Court to adopt. This approach comes the closest to making Magnetar whole.

/ / /

/ / /

---

[11]    As the litigation is ongoing, Magnetar reserves the right to supplement its award calculation at an appropriate time in the future with additional fees, costs, and interest calculations.

1

## V. <u>CONCLUSION</u>

For the foregoing reasons, Magnetar respectfully requests that the Court grant an award of reasonable attorney fees and costs in the amount of $819,646 and an award of prejudgment interest in the amount of $324,505, for a total award of $1,144,151.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: _October 22, 2009_    By: _____

John B. Sganga, Jr.
David G. Jankowski
Christopher L. Ross
Attorneys for Defendant/Counterclaimant,
MAGNETAR TECHNOLOGIES
CORPORATION

1

## PROOF OF SERVICE

2  I am a citizen of the United States of America and I am employed in

3 Irvine, California.  I am over the age of 18 and not a party to the within action.

4 My business address is 2040 Main Street, Fourteenth Floor, Irvine, California.

5 On October 22, 2009, the within document **DEFENDANT MAGNETAR**

6 **TECHNOLOGIES     CORP.'S     SUPPLEMENTAL     MEMORANDUM**

7 **REGARDING FEES AND COSTS** was electronically filed with the Court and

8 notification of same will be forwarded to the following Counsel registered to

9 receive Electronic Notifications as follows:

10            Ted S. Ward
             tward@bkwllp.com
11           Berke, Kent & Ward LLP
             811 Wilshire Boulevard, Suite 1700
12           Los Angeles, CA 90017
             Telephone: (213) 995-2500
13           Facsimile:  (213) 995-2505

14  I declare that I am a member of the bar of this Court.

15  Executed on October 22, 2009 at Irvine, California.

16

17

18  7948001
    102209
19

20

David G. Jankowski

21

22

23

24

25

26

27

28