JS-6

**LINK: 171**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INTAMIN, LTD., a Maryland corporation,<br><br>                    Plaintiff,<br><br>          vs.<br><br>MAGNETAR TECHNOLOGIES CORP., a Nevada Corporation, and DOES 1-10, inclusive,<br><br>                    Defendants. | **Case No. CV 04-0511 GAF (JWJx)**<br><br>ORDER RE: MAGNETAR'S APPLICATION FOR REASONABLE ATTORNEYS' FEES AND COSTS |

**I.**

**INTRODUCTION & BACKGROUND**

Plaintiff Intamin, Ltd. ("Intamin") filed the present suit against Magentar Technologies Corp. ("Magnetar") on April 30, 2004.  Intamin alleged that a Magnetar-produced braking system for amusement park rides infringed on its supposed interest in U.S. Patent No. 6,062,350 ("the 350 patent"), titled "Braking System for an Amusement Device."  Magnetar moved for summary judgment of non-infringement.  Judge Taylor, then assigned to the case, granted the motion and entered judgment for Magnetar. Magnetar appealed to the Federal Circuit, which vacated a portion of the claim construction which it deemed to be inadequate and incomplete. Intamin, Ltd. v. Magnetar Technologies, Corp., 483 F.3d 1328 (Fed. Cir. 2007).  The matter was then remanded to this Court.

On May 22, 2009, this Court granted summary judgment in favor of Magnetar. (<u>See</u> Memorandum and Order Regarding Defendants' Motion for Summary Judgment, Docket No. 160.) The Court's grant of summary judgment to Magnetar was in part the result of its conclusion that Magnetar's braking system did not infringe on any purported Intamin intellectual property, and in part an acknowledgment of Magnetar's "unclean hands" affirmative defense.  (<u>Id.</u> at 24.)  The "unclean hands" conclusion was supported by Magnetar's evidence regarding multiple Intamin misdeeds in this matter. Specifically, Magnetar brought before the Court evidence of: Intamin's false claims regarding ownership of an interest in the subject patent; Intamin's falsified patent assignment documents; and Intamin's improper suppression of evidence in not producing the falsified assignments during discovery in this case.

While Intamin has appealed this Court's ruling to the Federal Circuit (Docket No. 174.), the Court has proceeded to consider Magnetar's motion for an award of attorneys' fees and costs.  Specifically, the Court's August 26, 2009 orders (Docket Nos. 167 and 168.) set forth a two-phase schedule and process by which Magnetar could seek attorneys's fees in this case, pursuant to 35 U.S.C. § 285.  After the Court determined, consistent with this process and schedule, that Intamin's actions and omissions were "exceptional" and warranted an award of attorneys' fees under section 285 (10/8/09 Order, Docket No. 177.), Magnetar filed a supplemental memorandum and related sealed documents regarding the precise quantum of attorneys' fees and costs that it claims should be awarded. (Docket No. 179.)

The Court hereby **GRANTS** Magnetar's motion for attorneys' fees and costs, in an amount consistent with the reasoning set forth below.

## II.

## DISCUSSION

### A. APPLICABLE LAW

#### 1. ATTORNEYS' FEES

Federal Circuit precedent "governs the substantive interpretation of 35 U.S.C.

§ 285, which is unique to patent law." <u>Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.</u>, 182 F.3d 1356 (Fed. Cir. 1999).  In assessing the reasonableness of the amount of an attorneys' fees award pursuant to section 285, the district court must support its conclusion "by adequate findings of the basis for the award," including consideration of "the number of hours worked by specific attorneys."  <u>Water Techs. Corp. v. Calco, Ltd.</u>, 850 F.2d 660, 674 (Fed. Cir. 1988).  Additionally, there "must be some evidence to support the reasonableness of, <u>inter alia</u>, the billing rate charged and the number of hours expended," and this evidence properly includes "surveys" of "patent-lawyer billing rates" in the relevant geographic area, such as "Los Angeles rates for a case tried in Los Angeles."  <u>Lam, Inc. v. Johns-Manville Corp.</u>, 718 F.2d 1056, 1068 (Fed. Cir. 1983); <u>Mathis v. Spears</u>, 857 F.2d 749, 755 (Fed. Cir. 1988); <u>Eli Lilly & Co. v. Zenith Goldline Pharmaceuticals, Inc.</u>, 264 F. Supp. 2d 753, 763 (S.D. Ind. 2003) (citing <u>Mathis</u>, 857 F. 2d at 755-56.).   Only if "the evidence reveals that the rate actually charged is abnormally high or abnormally low will the Court base an attorney fee award on an hourly rate at variance with the bill for legal services that was actually rendered to the client."  <u>Mathis v. Spears</u>, 857 F.2d at 756 (citing <u>Chromalloy Am. Corp. v. Alloy Surfaces Co.</u>, 353 F. Supp. 429, 431 (D. Del. 1973).).

While the district court need not necessarily "specifically mention" the factors cited in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975),[1] those "guidelines" are proper for use in "reaching...findings and conclusions" regarding section 285 awards.  <u>Mathis</u>, 857 F.2d at 755.  Additionally, cases subsequent to <u>Kerr</u> indicate that a court need not discuss each of the twelve <u>Kerr</u> guidelines, so long as it

---

[1] Factors relevant under <u>Kerr</u> include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the requisite skill to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of accepting the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  <u>Quesada v. Thomason</u>, 850 F.2d 537, 539 & n.1 (9th Cir. 1988).

1
2

discusses those most relevant to the particular case.  See Kessler v. Associates Fin. Servs. Co., 639 F.2d 498 (9th Cir. 1981).

3

### 2. COSTS AND NON-ATTORNEYS' FEES EXPENSES

4
5
6
7
8
9

The Federal Circuit has established that the "purpose of Section 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit."  Accordingly, attorneys' fees under section 285 "include those sums that the prevailing party incurs in the preparation for and performance of legal services related to...suit."  Central Soya Co., Inc. v. George A. Hormel & Co., 723 F.2d 1573, 1577 (Fed. Cir. 1983).

10

### 3. PREJUDGMENT INTEREST ON SECTION 285 AWARDS

11
12
13

A district court has "authority, in cases of 'bad faith or other exceptional circumstances,' to award prejudgment interest on the unliquidated sum of an award made under Section 285." Spears, 857 F.2d at 761.

14

### 4. FAILURE TO OPPOSE THE MOTION FOR ATTORNEYS' FEES AND COSTS

15
16
17
18
19
20
21
22
23
24

The Court's previous scheduling order indicated that after Magnetar filed its supplemental memorandum regarding the precise quantum of attorneys' fees and costs under section 285, Intamin's "response to [Magnetar's] supplemental memorandum" would be due seven days later. (Docket No. 168 at 2.)  Intamin has failed to comply with this deadline and never submitted any opposition to the motion for attorneys' fees. On that basis alone, the Court may grant the motion for attorneys' fees and costs.  See C.D. Cal. R. 7-12 (the "failure to file any required paper, or the failure to file it within the deadline [set by order], may be deemed consent to granting or denial of the motion.").  Notwithstanding Intamin's non-response in this matter, the Court will proceed to consider and address the quantum of fees and costs in greater detail.

25
26
27
28

4

1

**D. APPLICATION**

2

    **1. ATTORNEYS' FEES**

3

        ***a. Hourly Rates***

4

        Magnetar's counsel cite survey data to argue that their billing rates "are in line

5

with...the rates charged by the nation's leading patent litigation firms" and "the rates

6

charged by comparably sized firms in the Los Angeles...area."  (Supp. Memo. at 8.)

7

Counsel supports the first contention by noting that its partners' hourly billing rates in

8

the 2004 time frame ($380 to $510, see references to Cianfrani, Sganga, and other

9

partners in Confidential Ross Decl., Ex. A.) were comparable to the 2003 rates of

10

partners at highly-ranked[2] intellectual property firms Fish & Richardson ($340 to $575,

11

Jankowski Decl., Ex. L at 4.), Sidley Austin ($395 to $600, Id. Ex. L at 3.), and

12

Townsend & Townsend ($360 to $525, Id. Ex. L at 5.).  Similarly, counsel's associates

13

billed at 2004 hourly rates of $195 to $300, comparable to the associate billing rates of

14

the same three peer firms (Fish & Richardson associates billed at $195 to $355, Sidley

15

Austin associates at $205 to $395, and Townsend & Townsend associates at $150 to

16

$360, see Jankowski Decl., Ex. L at 3-5.)  Additionally, counsel note that according to

17

more recent 2009 surveys by the American Intellectual Property Lawyers Association

18

("AIPLA"), counsel's senior partner billed at an hourly rate ($660) above the median

19

and below the 75th percentile for comparably-sized intellectual property firms, and

20

other attorneys in the matter billed at hourly rates below the 25th percentile for

21

comparably-sized intellectual property firms. (Compare rates described for Sganga in

22

Confidential Ross Decl., Ex. A with Jankowski Decl., Ex. O, at 5; compare rates

23

described for other attorneys in Confidential Ross Decl., Ex. A with Jankowski Decl.,

24

Ex. O, at 5.)

25

26

27

28

---

[2] Fish & Richardson, Sidley Austin, and Townsend & Townsend were all ranked among the top 20 intellectual property firms in a 2003 American Lawyer survey of such firms.  See Jankowski Decl., Ex. J. Fish & Richardson and Sidley Austin both placed in the top five firms in the same survey.  See id.

1       To support its second contention, counsel offers evidence that it has "more than

2   180 attorneys in its three [Los Angeles] offices." (Supp. Memo. at 10.) In 2003, a

3   survey of hourly billing by "tiers" indicated that senior partner Sganga's 2004 billing

4   rate was within the same "tier," as 22.9% of partners in comparably-sized Los Angeles

5   firms, and lower than 34% of partners in that group. (Compare Confidential Ross Decl.,

6   Ex. A referencing Sganga with Helder Associates Survey, Jankowski Decl., Ex. N, at

7   155.)  Other partners billed at 2004 rates within or below the "tier" of 83% of the same

8   surveyed group (Compare Confidential Ross Decl. Ex A referencing Jankowski,

9   Cianfrani, and other partners with  Additionally, associate billing rates in 2004 were

10  below the average billing rates for their classes in firms of 100 or more attorneys.

11  (Jankowski Decl., Ex. N, at 157.)

12      Additionally, to support the reasonableness of hourly rates billed by its

13  paralegals and support staff, counsel indicates that its average support-staff billing rate

14  over the course of the litigation between 2004 and 2009 was $123.60. (Supp. Memo. at

15  By comparison, counsel argues, the average billing rate for support staff in the same

16  geographic region was $125 in the 2008 period alone, according to a National

17  Association of Legal Assistants survey.  (Jankowski Decl., Ex. M, at 4, 11.)

18      All of this information and evidence regarding the early stages of litigation and

19  the more recent time period is augmented by the fact that most of the billing in this

20  case—as indicated by Exhibit A to the Confidential Ross Declaration—took place in

21  2004-2005, in the first instance, and in 2009, in the second instance.   In sum, Magnetar

22  has submitted detailed evidence indicating that the rates for its counsel's partners,

23  associates, and support staff are not "abnormally high"; Intamin, as discussed above,

24  offers no evidence in response.  The Court concludes that the hourly rates on the bills

25  "actually rendered" to Magnetar should serve as the basis for its section 285 fee award.

26  Consistent with controlling case law, the Court concludes that the hourly rates charged

27  by counsel for Magnetar were within the range charged by counsel in similar firms

28  performing similar work.  Mathis, 856 F.2d at 756.  Thus, the Court will base its

section 285 fee award in this case on the rates charged by defense counsel during the relevant time period.

### b. Hours Billed

In determining a proper fee award under section 285, a court must also consider evidence regarding "the number of hours expended," and consider "the number of hours worked by specific attorneys." Lam, Inc., 718 F.2d at 1068; Mathis, 857 F.2d at 755; Water Techs. Corp., 850 F.2d at 674. Magnetar addresses the number of hours expended in this case by comparing the overall fees billed to the charges in the average similar patent infringement suit. (Supp. Memo. at 13.) A recent AIPLA survey indicates that the average patent infringement suit with between $1 million and $25 million at stake costs $1.794 million to litigate through the end of discovery (Jankowski Decl., Ex. O, at 6.); however, Magnetar's counsel's aggregate total hours worked produce a bill of approximately $800,000 in a case that has been litigated through discovery, two summary judgment motions, and the Federal Circuit. (See id.; see also table in Supp. Mem. at 4.) Indeed, according to the same survey just discussed, Magnetar's billed charges approximate the 25th percentile of billed charges in the same subset of cases discussed above. (Jankowski Decl., Ex. O, at 6 (referencing "first quartile" of charges).) Thus, Magnetar argues, the amount of hours billed in this case is reasonable.

Magnetar buttresses this argument with the claim that the average hourly billable rate for its attorneys in this case has been $330.66—a rate reflecting that "Knobbe Martens lower billing attorneys...associates supervised by junior partners...did the lion's share of the work." (Supp. Memo. at 14.) A comparison of the hours billed by attorneys Jankowski and Ross (Confidential Ross Decl., Ex. A.) with the hours billed by senior partner Sganga and partner Cianfrani (Id.) indicates that Ross and Jankowski's hours billed far outpace the latter two attorneys' hours.

The Court therefore concludes that there is "evidence to support the reasonableness of...the billing rate charged and the number of hours expended" in this

case, and a section 285 award according to Magnetar's actual billed charges is proper. <u>Water Techs. Corp.</u>, 850 F.2d at 674.

### c. *Kerr*

Consideration of the <u>Kerr</u> guidelines further confirms the finding that the requested attorneys' fees are reasonable in this matter. <u>See Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975); <u>Quesada v. Thomason</u>, 850 F.2d 537, 539 & n.1 (9th Cir. 1988). As discussed above, the customary fees for this matter charged by similar firms are in line with counsel's billed charges. Even the typical patent case involves a complex and technical area of the law, but, as Magnetar notes, this case cannot be viewed as typical given the "convoluted" history of this particular dispute and the millions of dollars potentially at stake.. (Supp. Memo. at 13 n.8 & 15; <u>See</u> Confidential Pribonic Declaration, ¶ 5, at 2.) And, as of the present date, Magnetar's counsel has achieved a very favorable result for its client.

The Knobbe, Martens firm is experienced and of high reputation, as evidenced by the <u>Managing Intellectual Property</u> surveys referenced in the Jankowski Declaration at Exhibits G-I. Additionally, the time and labor required to litigate this case through discovery, an initial summary judgment motion, an appeal to the Federal Circuit, and a second summary judgment motion were considerable in no small part due to the aggressive litigation tactics employed by Intamin. (Supp. Mem. at 14.) Thus, the Court's consideration of the <u>Kerr</u> guidelines confirms the conclusion that the award of all billed attorneys' fees pursuant to section 285 is proper in this case.

### 2. NON-FEE EXPENSES

Attorneys' fees under section 285 may properly ""include those sums that the prevailing party incurs in the preparation for and performance of legal services related to...suit." <u>Central Soya</u>, 723 F.3d at 1577. In the present case, Magnetar has submitted a Bill of Costs for $11,769.20 to Intamin; Magnetar also seeks $28,776 in additioanl costs for "legal research, additional photocopying charges, mailing costs, fax charges, [and] courier charges." The Bill of Costs adequately sets forth costs for service, deposition,

copies, and translations in this case (Jankowski Decl., , and the $28,776.49 in "additional costs" is described in the Confidential Ross Declaration at Exhibit A. These sums incurred by the "prevailing party" may properly be awarded under section 285, and based on the evidence submitted—to which Intamin has not responded—the Court concludes that such an award is proper.

**3. PREJUDGMENT INTEREST ON SECTION 285 AWARD**

The determination is discretionary, and the Court also has discretion to set the rate of interest. See Mathis v. Spears, 857 F.2d 749, 761 (Fed. Cir. 1988). Magnetar suggests four different approaches to the calculation of interest (Supp. Memo. at 18.), and urges the Court to award interest at a fixed rate of 10% par annum (Id. at 19.)]] However, in the Court's view, an award of prejudgment interest would be appropriate in cases of highly egregious conduct. While the Court has found misconduct in this case, the Court does not believe that it rises to a level that would support an award of prejudgment interest in addition to the award of fees and costs described above. Under the circumstances, the Court is satisfied that its award meets the objectives of Section 285, and declines to include an interest component.

**IV.**

**CONCLUSION**

For the reasons discussed in detail above, the Court hereby **GRANTS** Magnetar's motion for attorneys' fees in the amount of $779,100.34. This amount represents the $804,686.28 in legal charges, less $25,585.66 in time written off. (See Confidential Ross Decl., Ex. A.) Additionally, Magnetar's motion for expenses in the amount of $11,769.20, and other costs in the amount of $28,776.49 is **GRANTED**.

**IT IS SO ORDERED.**

DATED: December 28, 2009

_____
Judge Gary Allen Feess
United States District Court